UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BEVERLY L. SWANIGAN,
BRIAN LEE KELLER, and
SHERI ANOLICK, individually
and on behalf of others similarly situated,

        Plaintiffs,

vs.

FCA US, LLC, a foreign limited
liability company, and
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA ("UAW"),
jointly and severally,

        Defendants.
_____/

Case No. 18-cv-10319
Hon. Gershwin A. Drain
Magistrate David R. Grand

**SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Raymond J. Sterling (P34456)
James C. Baker (P62668)
Brian J. Farrar (P79404)
Attorneys for Plaintiffs
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
jbaker@sterlingattorneys.com
bfarrar@sterlingattorneys.com

Abigail V. Carter
Elisabeth Oppenheimer
Bredhoff & Kaiser PLLC
Attorneys for Defendant UAW
805 Fifteenth St. N.W.
Washington, D.C. 20005-2207
(202) 842-2600
acarter@bredhoff.com
eoppenheimer@bredhoff.com

Thomas W. Cranmer (P25252)
David D. O'Brien (P65532)
Brian Schwartz (P69018)
Attorneys for Defendant FCA US, LLC
MILLER, CANFIELD, PADDOCK & STONE
840 West Long Lake Rd., Ste. 150
Troy, MI 48098-6358
cranmer@millercanfield.com
obrien@millercanfield.com
schwartzb@millercanfield.com

Julia M. Jordan
Jacob E. Cohen
Sullivan & Cromwell LLP
Attorneys for Defendant FCA US, LLC
1700 New York Avenue, N.W. Suite 700
Washington, DC 20006-5215
(202) 956-7500
Jordanjm@sullcrom.com
cohenja@sullcrom.com

## INTRODUCTION

1. Plaintiffs bring this hybrid § 301 claim against FCA US, LLC and/or its predecessors ("FCA"), and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW" or "Union").

2. FCA engaged in collusion with the UAW to obtain company-friendly positions at the bargaining table and elsewhere, including giving bribes which the UAW accepted, to the detriment of plaintiffs and the proposed class.

3. Plaintiffs are employees of FCA and are dues-paying members of the UAW.

4. Plaintiffs, individually and on behalf of those similarly situated, bring this action against FCA for breaches of collectively bargained agreements and the bargaining process pursuant to § 301 of the Labor Management Relations Act, 29 USC 185 ("LMRA").

5. Plaintiffs, individually and on behalf of those similarly situated, bring this action against their labor union, the UAW, pursuant to § 301 of the LMRA, for violations and breaches of the Union's duty of fair representation by engaging in improper action, including using union dues for improper purposes, and accepting money, gifts, bribes, and other prohibited payments to bargain away plaintiffs' rights, and the rights of other similarly situated individuals.

6. § 301 of the Labor Management Relations Act, 29 USC 185, includes a limitations period within which to file this hybrid action.

7. Plaintiffs have been unable to fully discovery the full extent of the collusion given the shortened period between the time that initial public disclosure of some of the collusion happened, and the filing date of this action.

8. There exist ongoing federal criminal investigations into the collusion, including charges and guilty pleas for conspiracy to violate § 302 of the Labor Management Relations Act, 29 USC 186.

9. Due to the secrecy of the federal criminal investigations, sealed indictments, pleas, and forthcoming sentencings, plaintiffs have been unable to fully discover what FCA and the UAW knew and what collusive conduct FCA and the UAW engaged in through their designated bargaining representatives.

10. Discovery in this case will likely reveal the full extent to which the collusion affected the bargaining process and the collectively bargained agreements.

## THE PLAINTIFFS

11. Plaintiff Beverly L. Swanigan, an individual residing in Clinton Township, Macomb County, Michigan, is a citizen and resident of Michigan.

12. Plaintiff Brian Lee Keller, an individual residing in Mount Clemens, Macomb County, Michigan, is a citizen and resident of Michigan.

13. Plaintiff Sheri Anolick, an individual residing in Garden City, Wayne County, Michigan, is a citizen and resident of Michigan.

14. The potential class members who are similarly situated to plaintiffs include FCA employees who were dues paying UAW members impacted by the illegal, improper, and/or collusive conduct of FCA and the UAW.

## THE DEFENDANTS

15. Defendant FCA is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business in Auburn Hills, Oakland County, Michigan.

16. Defendant UAW, a labor organization as defined by the NLRA, 29 USC 152(5), is plaintiffs' exclusive bargaining representative under the NLRA, 29 USC 159(a), and maintains a principal place of business in this district.

## CLASS ALLEGATIONS

17. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the class defined as follows: all past and current employees of defendant FCA who were dues paying members of the UAW impacted by the illegal, improper, and/or collusive conduct of FCA and the UAW in violation of the LMRA.

18. The members of the class are so numerous that joinder is impractical, if not impossible.

19. The members of the class can be identified through the business records of FCA and the UAW.

20. There are common questions of fact and law affecting all class members arising from the conduct alleged in this complaint.

21. The plaintiffs' claims are typical of all proposed members of the class as they were members of the UAW and paid dues to have the UAW negotiate with FCA in good faith and on their behalf.

22. The illegal and/or collusive actions of FCA and the UAW adversely impacted the plaintiffs and all proposed members of the class.

23. Plaintiffs will fairly and adequately protect the interests of the proposed class as they are injured employees of FCA and injured members of the UAW.

24. A class action is a superior method of resolution to the other available methods for a fair, efficient, and just resolution of this controversy.

25. The expense and burden of individual litigation are impediments for class members to individually seek relief for the wrongful conduct alleged.

26. This action is maintainable under Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of fact and law predominate over questions affecting only individual class members.

27. The class-wide determination of liability for the collusive conduct predominates over individual questions such as the amount each class member individually paid for dues during the collusion period.

28. The amount in controversy with respect to each individual member of the class is relatively modest when compared to the costly prosecution of separate actions.

29. Plaintiffs have retained the undersigned counsel for these purposes, who have experience in employment and class action litigation.

## JURISDICTION AND VENUE

30. This action arises from plaintiffs' employment with FCA and membership in the UAW.

31. Although employment numbers vary slightly over time, FCA employs, and the UAW represents, tens of thousands of union workers.

32. This Court has personal jurisdiction over defendants because the claims arise from the transaction of business, the negotiation of collectively bargained agreements, and other conduct between the defendants which occurred in this district.

33. This Court has subject matter jurisdiction pursuant to 28 USC 1331 because the claims arise under the laws of the United States, 28 USC 1337(a) because the claims arise under an Act of Congress regulating commerce, and 29

USC 185 because the claims concern the violation of contracts and/or contract negotiations between an employer and labor organization.

34. To the extent any claims allege violations of state law, this Court has supplemental jurisdiction pursuant to 28 USC 1367 because those claims are so related to the claims arising under federal law that they form part of the same case or controversy.

35. Venue is proper pursuant to 28 USC 1391 because FCA and the UAW have principal places of business in this district and the events, omissions, or occurrences giving rise to the lawsuit occurred in this district.

## EXHAUSTION OF INTERNAL UNION REMEDIES IS FUTILE IF NOT IMPOSSIBLE

36. Article 33 of the UAW Constitution establishes a mechanism by which Union members typically exhaust internal Union procedures and remedies before proceeding with litigation.

37. In this hybrid § 301 claim, there is no ability nor duty to exhaust internal Union procedures.

38. FCA and the UAW have engaged in prolonged and expansive collusive conduct such that requiring exhaustion of internal remedies would be futile if not impossible.

39. The UAW's violations of its duty of fair representation have created such hostility to the class that there is no hope of obtaining a fair hearing through internal Union procedures.

40. The illegal collusive conduct between FCA and the UAW has created an inability to adequately address the class's grievances within the internal exhaustion process.

41. Internal Union procedures are unable to provide the class with the full relief it seeks.

42. Requiring exhaustion would run contrary to the class's right to seek judicial review of the facts and claims in this hybrid § 301 action.

43. The internal grievance process is not designed to, nor can it rectify the collusive conduct between FCA and the UAW.

## THE COLLECTIVE BARGAINING PROCESS

44. In 2009, FCA's predecessor Chrysler Corp. ("old Chrysler") emerged from bankruptcy protection.

45. After emerging from bankruptcy, the UAW Retiree Medical Benefits Trust ("UAW Trust"), Italian automaker Fiat S.p.A. ("Fiat"), and the U.S. and Canadian governments were the principal owners of old Chrysler.

46. Between the end of the bankruptcy and the end of 2013, the UAW Trust owned 41.5% of old Chrysler.

47. Between 2009 and January 2014, Fiat (now FCA) acquired the other parties' shares.

48. FCA now owns the Chrysler brand.

49. The UAW is one of the largest labor organizations in the United States and has historically represented Chrysler/FCA hourly workers.

50. The UAW is a hierarchical organization governed by its Constitution.

51. In the United States, collective bargaining agreements between the UAW and the "Big 3" automobile manufacturers (General Motors, Ford, and Chrysler/FCA) are negotiated approximately every four years.

52. Since emergence from bankruptcy, Chrysler (now FCA) bargained with the UAW in 2009, then again in 2011, and most recently in 2015.

53. Negotiations of the most recent master collective bargaining agreement between FCA and the UAW began in or around June 2015, with the final agreement completed in Fall 2015.

54. FCA and the UAW have also, from time to time, negotiated other agreements, including pension, bonus, and other agreements.

55. In January 2014, FCA purchased the 41.5% interest that the UAW Trust held in old Chrysler for approximately $4.4 billion.

56. The UAW's membership, of which plaintiffs and the class are members, pay periodic dues, the majority of which fund the collective bargaining and other negotiating processes between FCA and the UAW.

57. FCA designates employees, including officers, directors, and senior executives, to represent FCA in collective bargaining and other negotiations.

58. The designees are the agents of FCA empowered and authorized to negotiate on behalf of FCA.

59. Between 2009 and approximately June 2015, FCA designated Alphons Iacobelli ("Iacobelli"), its Vice President of Labor Relations, to be its lead representative for managing FCA's bargaining relationship with the UAW.

60. The UAW designates negotiators, including officers, directors, and senior executives, to represent the UAW and its membership in the collective bargaining and other negotiations.

61. The designees are the agents of the Union and its membership authorized to negotiate on behalf of UAW and its membership.

62. Between 2009 and early 2015, the UAW designated its officer General Holiefield ("Holiefield") to be its lead representative for managing UAW's bargaining relationship with FCA.

63. From 2012 through the 2015 collective bargaining process, the UAW also designated Virdell King ("King") to be its senior representative alongside Holiefield in the negotiating process and relationship with FCA.

## THE COLLUSION BETWEEN FCA AND THE UAW

64. Based on the sworn statement of FCA's Vice President Alphons Iacobelli, "in or before January 2009 and continuing through or after June 2015, [I] knowingly and voluntarily joined a conspiracy in which FCA and FCA executives and FCA employees agree to pay and deliver, and willfully paid and delivered, money and things of value to officers and employees of the UAW," including Holiefield and King. *January 15, 2018 Rule 11 Plea Agreement of Alphons Iacobelli, Eastern District of Michigan Case No. 2:17-cr-20406 at p. 3.*

65. Iacobelli admitted to performing these prohibited acts with "FCA and other co-conspirators" while "acting in the interest of employer FCA." *Id at p. 5, ¶ 7.*

66. Iacobelli also admitted that "over the course of the conspiracy, [I], FCA" and other FCA directors, senior managers, executives, and employees, "unlawfully paid and delivered more than $1.5 million in prohibited payments and things of value directly and indirectly to" Holiefield, King, and other UAW officials. *Id at p. 6, ¶ 8.*

67. Over the course of the conspiracy, FCA transferred prohibited payments and things of value to UAW officers and employees, "in an effort to obtain benefits, concessions, and advantages for FCA in the negotiation, implementation, and administration of collective bargaining agreements between FCA and the UAW." *Id at p. 7, ¶ 11.*

11

68. Discovery will likely reveal that the collusion included conduct other than bribes given and received.

69. Evidence suggests and discovery will likely reveal that the collusion impacted the sale of the equity interest in old Chrysler.

70. Iacobelli admitted that "[i]n December 2013, [I] sent an email to another FCA executive confirming that UAW Vice President General Holiefield had been 'scripted' in advance of the scheduled meeting between Holiefield and other members of the UAW's International Executive Board. *Iacobelli's January 15, 2018 Rule 11 Plea Agreement at p. 9, ¶ 19*.

71. Holiefield was instructed to "create a dialogue pursuant to [FCA's] outline." *Id at p. 9, ¶ 19*.

72. At that time, the UAW International Executive Board was considering the terms of a multi-billion dollar purchase offer for the equity interest held by the UAW Trust.

73. Based on the sworn statement of UAW officer King, from at least 2012, through the 2015 collective bargaining process, and into 2016, King "knowingly joined a conspiracy where officers and employees of the UAW would willfully request, receive, and accept – and agree to receive and accept – money and things of value" from people acting in the interest of FCA. *August 17, 2017 Rule 11 Plea Agreement of Virdell King; Eastern District of Michigan Case No. 2:17-cr-20406 at p. 2, ¶ 1*.

74. During that time, FCA employed tens of thousands of employees represented by the UAW.

75. Per King, "[I] was a UAW employee who served as a senior official in the UAW Chrysler Department from 2008 until … February 2016. As a senior UAW official … [I] was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW." *King's August 17, 2017 Rule 11 Plea Agreement at p. 3, ¶ 4.*

76. According to King, "in 2011 and 2015, [I] served as a member of the UAW national negotiating committee responsible for the collective bargaining agreements between the UAW and FCA." *Id at pp. 3-4, ¶ 4.*

77. Iacobelli and King have both pled guilty to conspiracy to violate the LMRA, 29 USC 186; Holiefield is deceased.

78. Other FCA and UAW officials also engaged in the ongoing conspiracy, as revealed through indictments against other UAW officers.

79. During the period of collusion, the UAW's membership has paid periodic dues to the UAW so that the Union would engage in good faith and honest negotiations with FCA.

80. FCA was aware that its employees paid union dues so that there would be good faith and honest negotiations in the bargaining process.

81. Discovery will likely reveal that dues paid were used to pay for non-CBA matters including paying for litigation, negotiations, associated salaries, costs, and expenses between FCA and the UAW Trust regarding the valuation, purchase, and sale of the UAW Trust's interest in old Chrysler.

82. The UAW has influence over the UAW Trust by appointing 5 of the 11-member board of trustees.

83. In 2012 and 2013, Fiat pursued ownership of the remaining 41.5% interest in old Chrysler held by the UAW Trust.

84. Prior to 2013, Fiat owned 58.5% of old Chrysler and needed the remaining 41.5% held by the UAW Trust to acquire 100% ownership.

85. A motivation to completely acquire old Chrysler was Fiat's goal to obtain old Chrysler's $12 billion in cash reserves.

86. Between 2009 and 2013, FCA and the UAW Trust disputed the value of UAW Trust's 41.5% interest in old Chrysler.

87. In 2014, FCA obtained 100% ownership of old Chrysler by paying the UAW Trust $4.4 billion for its interest in old Chrysler.

88. Per Iacobelli's plea testimony, as of December 2013, a month before the sale, the collusion tainted the negotiations between FCA and the UAW Trust, which by definition led to a non-arm's length transaction.

89. The UAW's requesting, receiving, accepting, and agreeing to receive and accept money, gifts, things of value, and prohibited payments from

FCA, among other acts of collusion, allowed FCA to obtain benefits, concessions, and advantages that benefited FCA in the negotiation, implementation, and administration of collective bargaining and other agreements between FCA and the UAW.

90. The collusion has resulted in millions of dollars of Union dues used for unintended or illegal purposes.

91. All collective bargaining agreements, with letters, other agreements, and supporting documents are in the possession of FCA and the UAW.

## DISCOVERING THE COLLUSION

92. Plaintiffs did not discover evidence of FCA's violation of the LMRA and the UAW's breach of its duty of fair representation until the public filing of federal indictments against Iacobelli and King on July 26, 2017 and August 8, 2017, respectively.

93. Plaintiffs were unaware of any of the details of the collusion, including the levels of involvement of FCA, the UAW, and its respective officers, directors, managers, senior executives, executives, and employees, until the public filing of King's August 17, 2017 Rule 11 Plea Agreement and Iacobelli's January 15, 2018 Rule 11 Plea Agreement.

94. Both the UAW and FCA concealed their knowledge of the conspiracy from the plaintiffs.

# COUNT I
# VIOLATION OF THE LABOR
# MANAGEMENT RELATIONS ACT (LMRA)

95. Plaintiffs incorporate the preceding paragraphs by reference.

96. FCA colluded with UAW executives to take FCA-friendly positions during negotiations and collective bargaining.

97. FCA's unlawful conduct also violated the LMRA in that two or more persons conspired to pay money, give gifts and things of value, and make prohibited payments in violation of 29 USC 186.

98. FCA, through the acts of its designated agents, including officers, directors, senior managers, and executives, knowingly and voluntarily joined the conspiracy.

99. Members of the conspiracy engaged in impermissible conduct with the intention of impermissibly influencing the collective bargaining process.

100. The prohibited payments and other conduct did impermissibly influence the collective bargaining process by allowing FCA to obtain company-friendly concessions from the UAW during the collective bargaining process.

101. The prohibited payments and other conduct impermissibly influenced the sale of the UAW Trust's interest to FCA.

102. Plaintiffs and other class members have been harmed by having the dues they have faithfully paid used for purposes other than good-faith bargaining and arm's length negotiations.

103. Plaintiffs' and other class members' dues have not been used for intended purposes.

104. Discovery will likely reveal the extent to which FCA impermissibly interfered with the collective bargaining process, that FCA breached collectively bargained and other negotiated agreements, and the extent to which plaintiffs and other class members have been harmed by the collusion.

## COUNT II
## BREACH OF THE DUTY OF
## FAIR REPRESENTATION UNDER THE LMRA

105. Plaintiffs incorporate the preceding paragraphs by reference.

106. The UAW has engaged in conduct that breached its duty of fair representation to its membership.

107. That conduct included willfully requesting, receiving, accepting, and agreeing to receive and accept money and things of value from persons acting in the interest of FCA to obtain company-friendly positions at the bargaining table.

108. The UAW authorized its designated agents, including Holiefield, King, and others, to represent the UAW's members who were employees of FCA.

109. The UAW had an obligation to serve the interests of its members, to avoid favoritism to management to the detriment of its membership, and to exercise its representational discretion with complete good faith and honesty.

110. The UAW, through its designated agents, including Holiefield, King, and others, requested and received money, prohibited payments, and things of value from FCA.

111. The UAW's representation of its membership was arbitrary, perfunctory, or inexcusably neglectful.

112. By its involvement in the FCA conspiracy, the UAW, through its designated agents, lacked a rational basis for decision-making within the bargaining process and other negotiations, and engaged in egregious unfairness or reckless disregard for its members' rights.

113. By the multiple UAW actors in the FCA conspiracy, the UAW failed in its duty to investigate the actions of its designated agents, to the detriment of its members' rights, and at the expense of its membership through millions of dollars of dues wasted on tainted bargaining.

114. The UAW's breach of its duty of fair representation harmed plaintiffs and other class members by the loss of their dues paid to the UAW, the intended purpose being for good-faith bargaining and arm's length negotiations.

115. Discovery will likely reveal the extent to which plaintiffs and other class members have been harmed by the collusion.

WHEREFORE plaintiffs, on behalf of themselves and others similarly situated, respectfully request that a money judgment enter against defendants,

jointly and severally, or by statutory apportionment, for an amount to be determined by a jury to compensate them for their damages, and specifically request the following:

> A. That this Court, as soon as practicable, certify the Class and appoint the undersigned as Class Counsel;
>
> B. That this Court award damages in an amount to be determined by a jury, including the value of all dues paid during the collusion period;
>
> C. That this Court award damages in an amount to be determined by a jury to compensate plaintiffs and the Class for their losses sustained by the collusion-tainted bargaining and/or other negotiations between FCA and the UAW;
>
> D. That this Court award damages in an amount to be determined by a jury to compensate plaintiffs and the Class for the value of those dues that were spent relative to the sale of the UAW Trust's interest in old Chrysler to FCA;
>
> E. That this Court award reasonable attorney fees, costs, expenses, statutory interest, and interest as an element of damages; and
>
> F. That this Court award whatever additional equitable and monetary relief, including punitive damages if available, that justice requires.

## CONTINUED DEMAND FOR JURY TRIAL

Plaintiffs, by themselves and as representatives of the Class, respectfully continue their demand for a trial by jury as to all issues.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:  /s/ Raymond J. Sterling
     /s/ James C. Baker
     /s/ Brian J. Farrar
     Raymond J. Sterling (P34456)
     James C. Baker (P62668)
     Brian J. Farrar (P79404)
     Attorneys for Plaintiffs
     33 Bloomfield Hills Pkwy., Ste. 250
     Bloomfield Hills, MI 48304
     (248) 644-1500

Dated: May 22, 2018

**PROOF OF SERVICE**

I certify that on May 22, 2018, I filed the foregoing paper with the Clerk of the Court using the ECF system which will electronically send notification to all counsel of record.

/s/James C. Baker
Sterling Attorneys at Law, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com