IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————————— x

BEVERLY L. SWANIGAN, *et al.*,
individually and on behalf of others
similarly situated,

        Plaintiffs,

v.

FCA US, LLC, *et al.*,

        Defendants.

———————————————————— x

No. 18-cv-10319-GAD-DRG

Honorable Gershwin A. Drain
District Court Judge

Honorable David R. Grand
Magistrate Judge

**(Oral Argument Requested)**

## FCA US LLC'S MOTION TO DISMISS
## THE SECOND AMENDED COMPLAINT

Thomas W. Cranmer (P25252)
David O'Brien (P65532)
Brian Schwartz (P69018)
MILLER, CANFIELD, PADDOCK
& STONE, PLC
840 West Long Lake Road, Suite 150
Troy, Michigan 48098-6358
Tel:  (248) 879-2000
*cranmer@millercanfield.com*
*obrien@millercanfield.com*
*schwartzb@millercanfield.com*

Julia M. Jordan (N.Y. 2814952)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006-5215
Tel:  (202) 956-7500
*jordanjm@sullcrom.com*

Steven L. Holley (N.Y. 1917830)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000
*holleys@sullcrom.com*
*cohenja@sullcrom.com*

*Counsel for Defendant FCA US LLC*

June 5, 2018

Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant FCA USA LLC ("FCA"), by and through its attorneys, Sullivan & Cromwell LLP and Miller, Canfield, Paddock and Stone, PLC, moves this Court to dismiss with prejudice the single cause of action pled against it in Count I of Plaintiffs' Second Amended Complaint on the ground that Plaintiffs have failed to state a claim upon which relief may be granted.  In support of this motion, FCA says as follows:

1.     On January 26, 2018, Plaintiffs Beverly Swanigan, Brian Lee Keller, and Sheri Anolick filed this putative class action lawsuit against Defendants FCA and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").   On April 2, 2018 and again on May 22, 2018—before FCA's response was due—Plaintiffs filed a First Amended Complaint and a Second Amended Complaint ("SAC"), respectively.

2.     The Second Amended Complaint asserts what Plaintiffs characterize as a "hybrid" claim under Section 301 of the Labor Management Relations Act ("LMRA"), alleging that (i) FCA "breache[d] [] collectively bargained agreements" (Count I) (SAC ¶¶ 1, 4, 96-103), and (ii) the UAW "breach[ed] [its] duty of fair representation" (Count II).  (*Id.* ¶¶ 5, 106-114.)  Plaintiffs, however, do not identify any provision of a collective bargaining agreement that FCA allegedly breached.  Instead, in their single substantive "Count" against FCA, Plaintiffs

allege only that FCA "violated the LMRA in that two or more persons conspired to pay money, give gifts and things of value, and make prohibited payments in violation of 29 USC 186 [*i.e.*, Section 302 of the LMRA]." (*Id.* ¶ 97.)

3.      As explained more fully in the accompanying Memorandum of Law, Plaintiffs' claim against FCA should be dismissed with prejudice for the following reasons:

a.      *First*, Plaintiffs cannot assert a Section 301 claim based on their alleged dissatisfaction with the price at which the UAW Retiree Medical Benefits Trust (the "UAW Trust") sold certain securities to FCA in January 2014. (*Id.* ¶¶ 55, 87-89.) Section 301 applies only to labor contracts "between an employer and a labor organization." 29 U.S.C. § 185. The UAW Trust is not a "labor organization"; rather, it is a "voluntary employees beneficiary association trust" that is an entirely separate legal entity from the UAW. *Fiat N. Am. LLC* v. *UAW Retiree Med. Benefits Trust*, 2013 WL 3963684, at *2 (Del. Ch. July 30, 2013). Moreover, the agreement to sell securities on which Plaintiffs focus has nothing to do with collective bargaining or any other terms or conditions of Plaintiffs' employment, and therefore is not a labor contract under Section 301. A "labor contract" under Section 301 is limited to an agreement that is "significant to the maintenance of labor peace" between "employers and labor organizations," and

"directly affect[s] the employment relationship." *Retail Clerks Int'l Ass'n* v. *Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962).

b.   *Second*, Plaintiffs cannot transform a claim under Section 302 of the LMRA (which expressly concerns improper payments) into a Section 301 claim (which expressly concerns claims for "violation of contracts").  Section 302 "does not create a private right of action," *Ohlendorf* v. *United Food & Comm. Workers Int'l Union, Local 876*, 883 F.3d 636, 639 (6th Cir. 2018), and allegations of "improper payoffs to union officials" "may not be redressed pursuant to § 301." *Garrish* v. *UAW*, 417 F.3d 590, 597-98 (6th Cir. 2005).  Instead, to state a claim under Section 301, Plaintiffs must "identify specific contract provisions that support their assertions of how Defendants breached the CBA and other agreements," which Plaintiffs do not, and cannot, do.  *Young* v. *Int'l Union*, 148 F. Supp. 3d 602, 616 (E.D. Mich. 2015).

c.   *Third*, the Second Amended Complaint should be dismissed because Plaintiffs fail to adequately allege that they are excused from attempting to exhaust both (i) "the grievance procedure established in the [collective bargaining agreement]," and (ii) "the appeal procedure established in the UAW Constitution." *Chapman* v. *UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (*en banc*). Plaintiffs made no effort to redress their grievances through established channels

before filing suit in this Court, and that is an independent basis to dismiss their Second Amended Complaint.

4.    As Local Rule 7.1(a) requires, FCA's counsel conferred with Plaintiffs' counsel on May 31, 2018 to seek concurrence in the relief sought by this motion, but Plaintiffs declined to agree to dismiss their Second Amended Complaint voluntarily.

WHEREFORE, FCA respectfully requests that this Court grant its motion and enter an order dismissing the single cause of action pled against it in Count I of the Second Amended Complaint.

Respectfully submitted,

/s/ Thomas W. Cranmer
Thomas W. Cranmer (P25252)
David O'Brien (P65532)
Brian Schwartz (P69018)
MILLER, CANFIELD, PADDOCK & STONE, PLC
840 West Long Lake Road, Suite 150
Troy, Michigan 48098-6358
Tel:  (248) 879-2000

Julia M. Jordan (N.Y. 2814952)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.,
Suite 700
Washington, D.C. 20006-5215
Tel:  (202) 956-7500

Steven L. Holley (N.Y. 1917830)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000

*Counsel for Defendant FCA US LLC*

June 5, 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————————— x

BEVERLY L. SWANIGAN, *et al.*,
individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

FCA US, LLC, *et al.*,

      Defendants.

———————————————————— x

No. 18-cv-10319-GAD-DRG

Honorable Gershwin A. Drain
District Court Judge

Honorable David R. Grand
Magistrate Judge

**(Oral Argument Requested)**

## FCA US LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Thomas W. Cranmer (P25252)
David O'Brien (P65532)
Brian Schwartz (P69018)
MILLER, CANFIELD, PADDOCK
& STONE, PLC
840 West Long Lake Road, Suite 150
Troy, Michigan 48098-6358
Tel:  (248) 879-2000
*cranmer@millercanfield.com*
*obrien@millercanfield.com*
*schwartzb@millercanfield.com*

Julia M. Jordan (N.Y. 2814952)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006-5215
Tel:  (202) 956-7500
*jordanjm@sullcrom.com*

Steven L. Holley (N.Y. 1917830)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000
*holleys@sullcrom.com*
*cohenja@sullcrom.com*

*Counsel for Defendant FCA US LLC*

June 5, 2018

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ............................................................ 1

**ALLEGATIONS OF THE SECOND AMENDED COMPLAINT** ................... 6

    A.    The 2014 Purchase Agreement ......................................... 6

    B.    Plaintiffs' Claims and Allegations .................................... 8

**LEGAL STANDARD** ........................................................................ 9

**ARGUMENT** ................................................................................. 10

**I.**    **PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE VIOLATION OF THE LMRA** ................................................ 10

    A.    The UAW Trust is Not a Labor Organization and the Purchase Agreement is Not a Labor Contract Under Section 301 ........................................................... 11

    B.    Plaintiffs Do Not Allege That FCA Breached Any Collective Bargaining Agreement ....................................... 13

    C.    Plaintiffs' Disguised Section 302 Claim Should Be Dismissed Because That Criminal Statute Does Not Create a Private Action ........................................... 16

**II.**   **PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THAT THEY EXHAUSTED BOTH THEIR CONTRACTUAL AND INTERNAL UNION REMEDIES** ........................................... 19

    A.    Plaintiffs Concede That They Did Not Exhaust the Grievance Procedures Under the Collective Bargaining Agreement ................. 20

    B.    Plaintiffs Do Not Adequately Allege That They Are Excused From Exhausting the Internal Union Appeal Procedures ................. 21

**CONCLUSION** ............................................................................. 25

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*16630 Southfield L.P.* v. *Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ...................................................................... 22, 23

*Abdelmesih* v. *Waldorf-Astoria*,
  No. 93-cv-4921 (CSH), 1998 WL 740940 (S.D.N.Y. Oct. 21, 1998) .............. 16

*Am. Postal Workers Union, AFL-CIO, Headquarters Local 6885* v.
  *Am. Postal Workers Union, AFL-CIO*,
  665 F.2d 1096 (D.C. Cir. 1981) ................................................................. 15, 16

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 3, 9

*Ashland, Inc.* v. *Oppenheimer & Co.*,
  648 F.3d 461 (6th Cir. 2011) ........................................................................... 10

*Bassett* v. *NCAA*,
  528 F.3d 426 (6th Cir. 2008) ........................................................................ 9, 20

*Campbell* v. *PMI Food Equip. Grp., Inc.*,
  509 F.3d 776 (6th Cir. 2007) ........................................................................... 14

*Chapman* v. *United Auto Workers Local 1005*,
  670 F.3d 677 (6th Cir. 2012) (*en banc*) .................................................. *passim*

*Chrysler Grp. LLC* v. *Fox Hills Motor Sales, Inc.*,
  776 F.3d 411 (6th Cir. 2015) .......................................................................... 2, 6

*Copeland* v. *Penske Logistics LLC*,
  675 F.3d 1040 (7th Cir. 2012) ......................................................................... 16

*Curney* v. *City of Highland Park*,
  No. 11-cv-12083 (PJD),
  2012 WL 1079473 (E.D. Mich. Mar. 30, 2012) ........................................ 14, 15

*Demott* v. *UAW Int'l Union*,
   No. 07-cv-12648 (NGE),
   2007 WL 4303222 (E.D. Mich. Dec. 6, 2007) .................................... 21, 22, 23

*Dist. 2 Marine Eng'rs Beneficial Ass'n* v. *Grand Bassa Tankers, Inc.*,
   663 F.2d 392 (2d Cir. 1981) ............................................................ 13

*Emmet* v. *Franco*,
   No. 16-cv-11211 (GAD),
   2016 WL 4396059 (E.D. Mich. Aug. 18, 2016) .......................................... 4, 14

*FCA US, LLC* v. *Spitzer Autoworld Akron, LLC*,
   887 F.3d 278 (6th Cir. 2018) ............................................................ 2

*Fiat N. Am. LLC* v. *UAW Retiree Med. Benefits Trust*,
   C.A. No. 7903 (DFP), 2013 WL 3963684 (Del. Ch. July 30, 2013) ........ 2, 7, 12

*Garrish* v. *Int'l Union United Auto., Aerospace & Agric.*
   *Implement Workers of Am.*,
   417 F.3d 590 (6th Cir. 2005) ............................................................ 4, 11, 18

*Garrison* v. *Cassens Transp. Co.*,
   334 F.3d 528 (6th Cir. 2003) ............................................................ 10, 13

*Glasstetter* v. *Int'l Union*,
   No. 16-cv-11412 (RHC), 2016 WL 6822002 (E.D. Mich. Nov. 18, 2016) ..... 14

*Granite Rock Co.* v. *Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ........................................................................ 16, 19

*Haren* v. *Superior Dairy, Inc.*,
   23 F. App'x 509 (6th Cir. 2001) ........................................................ 20

*Higgins* v. *Int'l Union, Sec., Police, Fire Prof'ls of Am.*,
   398 F.3d 384 (6th Cir. 2005) ............................................................ 3

*Hines* v. *Anchor Motor Freight, Inc.*,
   424 U.S. 554 (1976) ........................................................................ 13

*Holliday* v. *Wells Fargo Bank, NA*,
   569 F. App'x 366 (6th Cir. 2014) ...................................................... 14

*J.I. Case Co.* v. *N.L.R.B.*,
321 U.S. 332 (1944) ........................................................................... 13

*Kenney* v. *United Auto., Aerospace & Agric. Implement Workers of Am.*,
No. 15-cv-1727 (JGC), 2016 WL 1409014 (N.D. Ohio Apr. 11, 2016) ........... 4

*Knighten* v. *Gen. Motors Corp.*,
No. 07-2559, 2009 WL 332821 (6th Cir. Feb. 12, 2009) ................................. 24

*Marine Terminal, Welfare Fund* v. *Tri-River Docks, Inc.*,
No. 90-cv-3461 (GMM), 1992 WL 82389 (N.D. Ill. Apr. 20, 1992) .............. 12

*Mays* v. *N. Am. Truck Platforms Flint Assembly*,
No. 94-cv-75229 (AC), 1995 WL 871013 (E.D. Mich. Sept. 20, 1995) ......... 25

*Mohawk Rebar Serv., Inc.* v. *Int'l Ass'n of Bridge, Structural,
Ornamental, & Reinforcing Iron Workers Local Union*,
No. 14-cv-137 (LW), 2015 WL 5657252 (N.D. Ohio Sept. 24, 2015) ............. 5

*Molnar* v. *Wibbelt*,
789 F.2d 244 (3d Cir. 1986) ..................................................... 2, 3, 12

*Morrissey* v. *Curran*,
483 F.2d 480 (2d Cir. 1973) ............................................................... 12

*New Albany Tractor, Inc.* v. *Louisville Tractor, Inc.*,
650 F.3d 1046 (6th Cir. 2011) ........................................................... 15

*Newspaper Guild of Salem* v. *Ottaway Newspapers, Inc.*,
79 F.3d 1273 (1st Cir. 1996) ............................................................ 16

*Ohlendorf* v. *United Food & Comm. Workers Int'l Union, Local 876*,
883 F.3d 636 (6th Cir. 2018) ................................................... *passim*

*Overstreet* v. *Mack Indus., Inc.*,
260 F. App'x 883 (6th Cir. 2008) ...................................................... 15

*Pearson* v. *United Auto. Workers Int'l Union*,
694 F. App'x 401 (6th Cir. 2017) ...............................................21, 24

*Reade* v. *Allied Trades Council*,
No. 04-cv-3542 (BSJ), 2005 WL 3038645 (S.D.N.Y. Oct. 7, 2005) ................ 18

*Republic Steel Corp.* v. *Maddox*,
379 U.S. 650 (1965) .................................................................... 20, 25

*Retail Clerks Int'l Ass'n* v. *Lion Dry Goods, Inc.*,
369 U.S. 17 (1962) ................................................................. 3, 12, 13

*Saco* v. *Deutsche Bank Nat. Tr. Co.*,
595 F. App'x 500 (6th Cir. 2014) ....................................................... 14

*Saunders* v. *Ford Motor Co.*,
879 F.3d 742 (6th Cir. 2018) ........................................................... 10

*Sellers* v. *O'Connell*,
701 F.2d 575 (6th Cir. 1983) ........................................................... 17

*Shapiro* v. *Cook United, Inc.*,
762 F.2d 49 (6th Cir. 1985) ............................................................ 15

*Smith* v. *Hickey*,
482 F. Supp. 644 (S.D.N.Y. 1979) ..................................................... 12

*Spicer* v. *Ford Motor Co.*,
491 F. App'x 543 (6th Cir. 2012) .............................................. 5, 21, 23

*Terwilliger* v. *Greyhound Lines, Inc.*,
882 F.2d 1033 (6th Cir. 1989) ................................................ 20, 21, 22

*Thomas* v. *Joint Apprenticeship Comm. of Plumbing & Pipefitting Indus.*,
823 F.2d 553 (Table), 1987 WL 38059 (6th Cir. 1987) ................................ 13

*Tr. of Operating Eng'rs Pension Trust* v. *Tab Contractors, Inc.*,
224 F. Supp. 2d 1272 (D. Nev. 2002) ................................................... 12

*Wagner* v. *Gen. Dynamics*,
905 F.2d 126 (6th Cir. 1990) ...................................................... 19, 23

*Washington* v. *Ford Motor Co.*,
35 F. App'x 160 (6th Cir. 2002) .................................................. 23, 24

*Willetts* v. *Ford Motor Co.*,
    583 F.2d 852 (6th Cir. 1978) ............................................................. 19

*Winston* v. *Gen. Drivers, Warehousemen & Helpers,*
    *Local Union No. 89*,
    93 F.3d 251 (6th Cir. 1996) ................................................... 5, 20, 24

*Xin Wei Lin* v. *Chinese Staff & Workers' Ass'n*,
    527 F. App'x 83 (2d Cir. 2013) ................................................. 16, 17

*Young* v. *Int'l Union*,
    148 F. Supp. 3d 602 (E.D. Mich. 2015),
    *aff'd*, 686 F. App'x 304 (6th Cir. 2017) ................................... *passim*

*Young* v. *UAW*,
    686 F. App'x 304 (6th Cir. 2017) ..................................................... 18

*Yuhasz* v. *Brush Wellman, Inc.*,
    341 F.3d 559 (6th Cir. 2003) ........................................................... 14

*Zbuka* v. *Marathon Ashland Petroleum LLC*,
    No. 08-cv-1505 (NAV),
    2008 WL 11381874 (N.D. Ohio Oct. 22, 2008) ............................. 21

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure 12(b)(6) ................................... 9, 14, 23

Labor Management Relations Act § 301,
    29 U.S.C. § 185 ........................................................................ *passim*

Labor Management Relations Act § 302,
    29 U.S.C. § 186 ........................................................................ *passim*

National Labor Relations Act § 2,
    29 U.S.C. § 152 ................................................................................. 12

*Notice of Proposed Individual Exemption Involving Chrysler LLC*,
    74 Fed. Reg. 51,182 (Oct. 5, 2009) ................................................... 7

## STATEMENT OF ISSUES PRESENTED

1.   Should this Court dismiss Plaintiffs' "hybrid" claim under Section 301 of the Labor Management Relations Act ("LMRA") to the extent it relies upon an agreement to sell securities (Second Amended Complaint ("SAC") ¶ 69), because (a) neither the seller nor the buyer is a "labor organization," and (b) the agreement is not a labor contract under Section 301 and has nothing to do with wages, hours, or any other terms and conditions of Plaintiffs' employment?

2.   Should this Court dismiss Plaintiffs' "hybrid" Section 301 claim seeking "millions of dollars" in damages (SAC ¶ 90) because Plaintiffs do not allege that FCA US LLC ("FCA") breached any provision of any applicable collective bargaining agreement, but instead allege "bribe[ry]" in violation of Section 302 of the LMRA (*id.* ¶¶ 2, 97), which does not authorize a private action, let alone authorize monetary damages?

3.   Should this Court dismiss Plaintiffs' "hybrid" Section 301 claim because Plaintiffs do not adequately plead that the exhaustion of available remedies under both the collective bargaining agreement and the union Constitution would be futile?

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITIES

The controlling or most appropriate authorities for the relief that FCA seeks

include:

1.    Fed. R. Civ. P. 12(b)(6).

**Section 301 Does Not Apply to Sales of Securities, or to Agreements Where Neither the Seller Nor the Buyer is a Labor Organization:**

2.    29 U.S.C. § 152(5).

3.    *Retail Clerks Int'l Ass'n* v. *Lion Dry Goods, Inc.*, 369 U.S. 17 (1962).

4.    *Dist. 2 Marine Eng'rs Beneficial Ass'n* v. *Grand Bassa Tankers, Inc.*, 663 F.2d 392 (2d Cir. 1981).

5.    *Thomas* v. *Joint Apprenticeship Comm. of Plumbing & Pipefitting Indus.*, 823 F.2d 553 (Table), 1987 WL 38059 (6th Cir. 1987).

**Plaintiffs' Section 301 Claim Fails Because Plaintiffs Do Not Allege That FCA Breached any Provision of a Collective Bargaining Agreement:**

6.    *Campbell* v. *PMI Food Equip. Grp., Inc.*, 509 F.3d 776 (6th Cir. 2007).

7.    *Copeland* v. *Penske Logistics LLC*, 675 F.3d 1040 (7th Cir. 2012).

8.    *Young* v. *Int'l Union*, 148 F. Supp. 3d 602 (E.D. Mich. 2015).

**Plaintiffs Cannot Disguise a Barred Section 302 Claim as a Section 301 Claim:**

9.    *Garrish* v. *Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 417 F.3d 590 (6th Cir. 2005).

10.    *Ohlendorf* v. *United Food & Comm. Workers Int'l Union, Local 876*, 883 F.3d 636 (6th Cir. 2018).

**Plaintiffs Do Not Adequately Plead That Exhaustion of Their Contractual and Internal Union Remedies Would Be Futile:**

11.    *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650 (1965).

12.    *Terwilliger* v. *Greyhound Lines, Inc.*, 882 F.2d 1033 (6th Cir. 1989).

13.    *Chapman* v. *United Auto Workers Local 1005*, 670 F.3d 677 (6th Cir. 2012) (*en banc*).

14.    *Spicer* v. *Ford Motor Co.*, 491 F. App'x 543 (6th Cir. 2012).

## PRELIMINARY STATEMENT

The Sixth Circuit recently held that the prohibited payments provision of the Labor Management Relations Act ("LMRA") (Section 302) is a "criminal statute" that "does not create a private right of action," let alone "a right to sue for money damages." *Ohlendorf* v. *United Food & Comm. Workers Int'l Union*, 883 F.3d 636, 639, 642 (6th Cir. 2018). Nevertheless, in this putative class action, Plaintiffs—current or former FCA employees who are "dues paying members" of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") (SAC ¶ 17)—try to invent a private claim for damages based on the recent indictments and plea agreements of former FCA and UAW employees for making and receiving "prohibited payments." (*Id.* ¶ 66 (quoting plea agreement); *see also id.* ¶¶ 73-78.)

Although Plaintiffs attempt to evade *Ohlendorf* by characterizing their claim as a "hybrid § 301 claim" for "breaches of collectively bargained agreements" (SAC ¶¶ 1, 4), Plaintiffs fail to identify, as they are required to do, a single provision of a collective bargaining agreement allegedly violated by FCA. Plaintiffs instead claim that purported "bribes" by former FCA employees "impermissibly influence[d]" the UAW to accept "company-friendly positions" (*id.* ¶¶ 2, 100) in the negotiation of (i) the 2009, 2011, and 2015 "master collective bargaining agreement[s]" (*id.* ¶¶ 52, 53, 89), and (ii) an agreement to sell securities

to which the UAW is not a party and that has nothing to do with collective bargaining, and thus is outside the scope of Section 301—namely, a January 2014 transaction whereby FCA purchased "the 41.5% interest" in New Carco Acquisition LLC ("New Chrysler") held by the UAW Retiree Medical Benefits Trust (the "UAW Trust").  (*Id.* ¶ 55.)[1]

The Second Amended Complaint should be dismissed for the following independent reasons:

*First*, the Court should dismiss Plaintiffs' claim premised on FCA's purchase of "the 41.5% interest" in New Chrysler from the UAW Trust (SAC ¶ 55), which is a legal entity entirely separate from the UAW that was represented by an independent fiduciary in negotiations with FCA.  Section 301 applies only to labor contracts "between an employer and a labor organization."  29 U.S.C. § 185.  The UAW Trust is a "voluntary employees beneficiary association trust," *Fiat N. Am. LLC* v. *UAW Retiree Med. Benefits Trust*, 2013 WL 3963684, at *2 (Del. Ch. July 30, 2013), not a labor organization.  *See Molnar* v. *Wibbelt*, 789 F.2d 244, 250

---

[1]     Chrysler LLC filed for bankruptcy in 2009.  (SAC ¶ 44.)  Although the Second Amended Complaint refers to the post-bankruptcy entity as "old Chrysler" (*id.*), as part of the bankruptcy Chrysler LLC (*i.e.*, "Old Chrysler") sold "substantially all of [its] assets" to "'New Chrysler,' an entirely new corporate entity."  *Chrysler Grp. LLC* v. *Fox Hills Motor Sales, Inc.*, 776 F.3d 411, 415-16 (6th Cir. 2015); *see also FCA US, LLC* v. *Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 282 n.1 (6th Cir. 2018) ("Previous courts have distinguished between 'Old Chrysler' (aka Chrysler LLC), which existed before its bankruptcy, and 'New Chrysler' . . . which was formed after Old Chrysler's insolvency.").

(3d Cir. 1986) (holding that union "benefit [trust] funds" "do not constitute a labor organization"). Moreover, the agreement to sell securities on which Plaintiffs focus has nothing to do with the terms of Plaintiffs' employment and therefore is not a labor contract under Section 301. A "labor contract" under Section 301 is limited to an agreement that "directly affect[s] the employment relationship," such as wages, hours, working conditions, and job security. *Retail Clerks Int'l Ass'n* v. *Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962).

*Second*, the Second Amended Complaint should be dismissed because Plaintiffs do not plead that FCA "breached" any provision of any "collective bargaining agreement" (even if the agreement to sell securities qualified as one). *Higgins* v. *Int'l Union, Sec., Police, Fire Prof'ls of Am.*, 398 F.3d 384, 388 (6th Cir. 2005). Plaintiffs' conclusory speculation that "[d]iscovery will likely reveal the extent to which . . . FCA breached collectively bargained and other negotiated agreements" (SAC ¶ 104) does not come close to satisfying the "plausibility" pleading standard the Supreme Court set forth in *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) and thus does not state a claim. Plaintiffs were required to "identify and present the actual contract terms that [FCA] allegedly breached." *Young* v. *Int'l Union*, 148 F. Supp. 3d 602, 617 (E.D. Mich. 2015). Because Plaintiffs have not done so, they "have not plead[ed] sufficient facts to state a claim for relief based on a breach of the CBA or related agreements." *Id.* at 619. Moreover, as

this Court has held, Plaintiffs' assertion "that [they] will learn the required specificity through discovery is erroneous": "[t]he Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint." *Emmet* v. *Franco*, 2016 WL 4396059, at \*5 (E.D. Mich. Aug. 18, 2016) (Drain, J.).

The thrust of Plaintiffs' claim is that the "UAW accepted" "bribes" to take "company-friendly positions at the bargaining table and elsewhere." (SAC ¶ 2; *see also id.* ¶¶ 27, 38, 64-92, 96-104, 106-07, 112-13.) In short, Plaintiffs attempt to transform a claim under Section 302 of the LMRA (which expressly concerns improper payments) into a Section 301 claim (which expressly concerns claims for "violation of contracts"). Section 302, however, "does not create a private right of action," *Ohlendorf*, 883 F.3d at 639, and allegations of "improper payoffs to union officials" "may not be redressed pursuant to § 301." *Garrish* v. *UAW*, 417 F.3d 590, 597-98 (6th Cir. 2005). The law is clear that to state a claim under Section 301 for breach of contract—Plaintiffs' only gateway for potentially recovering monetary relief under the LMRA—"a plaintiff must point to a specific provision in the [collective bargaining] agreement that the employer allegedly violated." *Kenney* v. *UAW*, 2016 WL 1409014, at \*2 (N.D. Ohio Apr. 11, 2016). The Second Amended Complaint contains no such allegation.

*Third*, Plaintiffs fail to allege that they even attempted to exhaust both (i) "the grievance procedure established in the [collective bargaining agreement]," and (ii) "the appeal procedure established in the UAW Constitution." *Chapman* v. *UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (*en banc*). "[T]he court system is a place of last resort for employee grievances." *Winston* v. *Gen. Drivers, Warehousemen & Helpers, Local Union*, 93 F.3d 251, 255 (6th Cir. 1996). As the Sixth Circuit explained, "[a]llowing employees to sidestep [the grievance] system substitutes litigation for the method chosen by the employer and union for orderly resolution of employee grievances," which "can repair a claimed wrong or explain why no wrong occurred, all short of litigation." *Chapman*, 670 F.3d at 684.

Because "[t]here is no allegation that [Plaintiffs] ever attempted to resolve this dispute through [the] grievance procedures," the Second Amended Complaint should be "dismissed." *Mohawk Rebar Serv., Inc.* v. *Int'l Ass'n*, 2015 WL 5657252, at *6 (N.D. Ohio Sept. 24, 2015). Additionally, although Plaintiffs allege in conclusory fashion that "requiring exhaustion of internal [union] remedies would be futile if not impossible" (SAC ¶ 38), such "conclusory allegations" of futility cannot "excuse the requirement that [Plaintiffs] exhaust internal union remedies." *Spicer* v. *Ford Motor Co.*, 491 F. App'x 543, 546 (6th Cir. 2012).[2]

---

[2]    FCA joins and incorporates by reference the arguments in Sections II and III of the UAW's brief.

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

### A.      The 2014 Purchase Agreement

In sum, Plaintiffs allege the following in their Second Amended Complaint: After Chrysler LLC filed for bankruptcy in 2009—whereby Chrysler LLC sold "substantially all of [its] assets" to "'New Chrysler,'" *Chrysler*, 776 F.3d at 415-16—New Chrysler's assets were held by four parties:  "the UAW Trust [], Italian automaker Fiat S.p.A. ("Fiat") [*i.e.*, the predecessor to FCA's corporate parent], and the U.S. and Canadian governments."  (SAC ¶ 45.)  "Between 2009 and January 2014, Fiat [] acquired the other parties' shares" in New Chrysler (*id.* ¶ 47), including, as relevant here, in a January 2014 transaction whereby Fiat "purchased the 41.5% interest that the UAW Trust held in [New] Chrysler" (the "Purchase Agreement").  (*Id.* ¶ 55.)

In the Second Amended Complaint, Plaintiffs' speculation that alleged "bribes [to] the UAW" "tainted" the negotiation of the Purchase Agreement rests on the conclusory speculation that "discovery" might "reveal" that the UAW officials involved in the alleged "conspiracy" negotiated the "sale" price of the transaction.  (*Id.* ¶¶ 2, 69, 86-88.)  But according to Plaintiffs' own allegations, the participants in the alleged "conspiracy" were involved only in the negotiation of "collective bargaining agreements" (*id.* ¶¶ 59, 62-63, 67, 75-76), and were far removed from the negotiation of the Purchase Agreement.  For example, Plaintiffs

allege that the UAW Trust is governed by an "11-member board of trustees," but Plaintiffs do not assert that the purported conspirators were board members, only that the UAW "appoint[ed] 5 of the . . . trustees."  (*Id.* ¶ 82.)  Moreover, as the "primary condition" to providing the necessary waivers for the UAW Trust to own a stake in New Chrysler after the 2009 bankruptcy, the Department of Labor mandated "the appointment of an independent fiduciary to represent the [UAW Trust] with regard to New Chrysler securities transactions."[3]

Thus, as the UAW Trust's press release on its website makes clear, the Purchase Agreement was not negotiated by either the UAW or the UAW Trust's board of trustees, but by the UAW Trust's "Independent Fiduciary," "Brock Fiduciary Services."[4]  Indeed, the terms on which FCA bought the UAW Trust's stake in New Chrysler were litigated in the Delaware Chancery Court, with  Brock Fiduciary Services representing and "appearing on behalf of" the interests of the UAW Trust, *see Fiat*, 2013 WL 3963684, at *2, which further underscores that the UAW was not in control of the process.

---

[3]  Declaration of David O'Brien dated June 5, 2018, Ex. 1 (DOL News Release); *see Proposed Ind. Exemption Involving Chrysler LLC*, 74 Fed. Reg. 51,182, 51,192 (Oct. 5, 2009) ("condition[ing]" exemption from certain ERISA provisions on appointment of an "Independent Fiduciary" with "sole discretion regarding the management and disposition of the New Chrysler Shares").

[4]  O'Brien Decl. Ex. 2.  The Court may consider the materials cited in footnotes 3 and 4 because they are public records.  *See infra* at 9-10.

### B.    Plaintiffs' Claims and Allegations

Plaintiffs filed their initial Complaint on January 26, 2018.  (*See* Dkt. No. 1.)

On April 2, 2018 and again on May 22, 2018—before FCA's response was due—

Plaintiffs filed amended complaints based on the same core allegation:   that

between "January 2009 and . . . June 2015," "Alphons Iacobelli," a former FCA

employee, "bribe[d]" and "colluded with UAW executives to take FCA-friendly

positions during negotiations and collective bargaining."  (SAC ¶¶ 2, 64, 87.)[5]

Plaintiffs contend that the purported prohibited payments affected the

negotiation of two types of agreements.  *First*, Plaintiffs allege that Iacobelli's

payments to the UAW "allow[ed] FCA to obtain company-friendly concessions

from the UAW" in connection with "negotiation" of the 2009, 2011, and 2015

"master collective bargaining agreement[s] between FCA and the UAW."  (SAC

¶¶ 52-53, 89, 100.)  *Second*, Plaintiffs allege that the Purchase Agreement—an

asset sale unrelated to collective bargaining involving a legal entity separate from

the UAW—was not negotiated at "arm's length" as a result of payments that

---

[5]    Plaintiffs amended their complaints to, among other things, (i) correct the Initial Complaint's description of the Purchase Agreement, which wrongly asserted that the UAW "purchase[d] . . . [an] equity interest in FCA," (Initial Compl. ¶ 49), (ii) further speculate that "discovery" might "reveal that the collusion impacted the [Purchase Agreement]," (SAC ¶¶ 68-72), and (iii) allege that "exhaustion of internal [union] remedies would be futile."  (*Id.* ¶¶ 36-43; Am. Compl. ¶¶ 31-38.)

former FCA employees allegedly made to certain UAW employees (who are not alleged to have any involvement in those negotiations).  (*Id.* ¶ 88.)

On that basis, Plaintiffs assert a "hybrid § 301 claim" under the LMRA, alleging that the UAW "breach[ed] [its] duty of fair representation" and FCA "breache[d] [] collectively bargained agreements."  (*Id.* ¶¶ 1, 4, 5.)  Plaintiffs, however, do not identify any provision of any collective bargaining agreement that FCA breached.  Instead, in their substantive single "Count" against FCA, Plaintiffs allege only that "prohibited payments" by former FCA employees "impermissibly influenced" "UAW executives to take FCA-friendly positions during negotiations and collective bargaining," which "violated the LMRA in that two or more persons conspired to pay money, give gifts and things of value, and make prohibited payments in violation of 29 USC 186 [*i.e.*, Section 302 of the LMRA]."  (*Id.* ¶¶ 96-100.)  Plaintiffs seek a variety of "damages" and "monetary relief."  (*Id.* p. 19.)

## LEGAL STANDARD

To withstand dismissal under Rule 12(b)(6), Plaintiffs must plead enough facts to "state a claim that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  "[L]abels and conclusions," and "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice.  *Id*.  A court "may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims," *Bassett* v. *NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), as

well as "public records," and documents "appropriate for the taking of judicial notice." *Ashland, Inc.* v. *Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).

## ARGUMENT

"The Supreme Court has characterized employee actions under § 301 [of the LMRA] as 'hybrid' suits containing 'two causes of action'":

1. a claim "against the employer for breach of the [collective bargaining agreement]," and

2. a claim "against the union for 'breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.'"

*Saunders* v. *Ford Motor Co.*, 879 F.3d 742, 750 (6th Cir. 2018). These "two constituent claims" are "interdependent," and "[u]nless a plaintiff 'demonstrates both violations, he cannot succeed against either party.'" *Garrison* v. *Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003). As discussed below, Plaintiffs' "hybrid" § 301 claim should be dismissed for the following independent reasons.

## I. PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE VIOLATION OF THE LMRA.

Although Plaintiffs characterize their action as asserting a "hybrid § 301 claim" for "breaches of collectively bargained agreements" (SAC ¶¶ 1, 4), Plaintiffs' claim should be dismissed because it is a transparent attempt to recover "millions of dollars" in money damages (*id.* ¶ 90) for violations of Section 302 (the criminal prohibited-payments statute), which "does not create a private right of

action," and "most assuredly" does not create "a right to sue for money damages." *Ohlendorf*, 883 F.3d at 639, 642.  Indeed, Plaintiffs make clear in their single substantive "Count" against FCA that the sole basis for their Section 301 claim is alleged improper payments in violation of Section 302 (29 U.S.C. § 186):

> 96.   *FCA colluded with UAW executives* to take FCA-friendly positions during negotiations and collective bargaining.

> 97.   FCA's unlawful conduct also *violated the LMRA* in that two or more persons *conspired to pay money, give gifts and things of value, and make prohibited payments in violation of 29 USC 186*.

 (SAC ¶¶ 96, 97 (emphasis added).)

But that is not how Section 301 works.  Section 301 "creat[es] a right of action for violations of collective bargaining agreements," *Ohlendorf*, 883 F.3d at 642, and allegations of "improper payoffs to union officials," as here, "may not be redressed pursuant to § 301."  *Garrish*, 417 F.3d at 597-98.

## A.   The UAW Trust is Not a Labor Organization and the Purchase Agreement is Not a Labor Contract Under Section 301.

Section 301 of the LMRA authorizes federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  The Purchase Agreement on which Plaintiffs focus is outside the scope of Section 301 for two independent reasons:  (1) it is not an agreement "between" FCA and a "labor organization" (but an agreement between FCA and a legal entity

-11-

entirely separate from the UAW (the UAW Trust)); and (2) it has nothing to do with collective bargaining (it is an agreement to sell securities).

*The UAW Trust is Not a Labor Organization.* "[L]abor organization" is statutorily defined as "any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5). Although Plaintiffs allege that "Defendant UAW" is "a labor organization" under "29 USC 152(5)" (SAC ¶ 16), Plaintiffs do not, and cannot, allege that the UAW Trust—the party to the Purchase Agreement (*id.* ¶ 101)—is a labor organization. To the contrary, the UAW Trust is a "voluntary employees beneficiary association trust," *Fiat*, 2013 WL 3963684, at *2, and "union benefit trust funds . . . are not 'labor organizations'" as a matter of law. *Smith* v. *Hickey*, 482 F. Supp. 644, 648 (S.D.N.Y. 1979).[6]

*The Purchase Agreement is Not a Labor Contract.* The Supreme Court has held that Section 301 does not apply to all contracts; instead, Section 301 applies only to "contract[s]" that are "significant to the maintenance of labor peace" between "employers and labor organizations," and "directly affect[] the

---

[6]     *See Tr. of Operating Eng'rs Pension Trust* v. *Tab Contractors, Inc.*, 224 F. Supp. 2d 1272, 1279 (D. Nev. 2002) ("[Union] Trust Funds are not 'labor organizations' under the LMRA."); *Molnar*, 789 F.2d at 250 (same); *Morrissey* v. *Curran*, 483 F.2d 480, 484 (2d Cir. 1973) (same); *Marine Terminal, Welfare Fund* v. *Tri-River Docks, Inc.*, 1992 WL 82389, at *5 (N.D. Ill. Apr. 20, 1992) (same).

employment relationship." *Retail Clerks*, 369 U.S. at 28.  In other words, a labor

contract relates to "hiring and work and pay in [the bargaining] unit." *J.I. Case*

*Co.* v. *N.L.R.B.*, 321 U.S. 332, 334-35 (1944); *see Hines* v. *Anchor Motor Freight,*

*Inc.*, 424 U.S. 554, 563 (1976) ("[w]ages, hours, working conditions, seniority, and

job security" are prototypical subjects of labor contracts).  An agreement regarding

the "sale" of securities (SAC ¶ 101) relates to none of those things.

Thus, because the Purchase Agreement does not "deal[] directly with the

working conditions and employment relationship of [FCA's] employees," it is not

a labor contract subject to Section 301.  *Dist. 2 Marine Eng'rs Beneficial Ass'n* v.

*Grand Bassa Tankers, Inc.*, 663 F.2d 392, 397-99 (2d Cir. 1981); *see Thomas* v.

*Joint Apprenticeship Comm.*, 1987 WL 38059, at *1 (6th Cir. 1987) (Section 301

inapplicable to agreement regarding procedures for "the proper training of

apprentices in [the plumbing] field" because it did not "have as its purpose 'the

maintenance of labor peace.'").

### B.      Plaintiffs Do Not Allege That FCA Breached Any Collective Bargaining Agreement.

To state a hybrid Section 301 claim against FCA, Plaintiffs must plead "a

breach of a collective bargaining agreement by the employer." *Garrison*, 334 F.3d

at 538.  Plaintiffs here make no such allegation.  Indeed, Plaintiffs fail to specify

how any of FCA's conduct breached a single provision of any agreement between

FCA and the UAW.  That alone dooms Plaintiffs' claim.  Courts have repeatedly

dismissed hybrid Section 301 claims where, as here, plaintiffs "do not identify specific contract provisions that support their assertions of how Defendants breached the CBA and other agreements." *Young*, 148 F. Supp. 3d at 616; *see Campbell* v. *PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 787 (6th Cir. 2007) (affirming dismissal "because there is a complete absence of factual allegations to support a claim for breach of contract"); *Glasstetter* v. *Int'l Union*, 2016 WL 6822002, at *2 (E.D. Mich. Nov. 18, 2016) (same).

Plaintiffs cannot state a claim by asserting that "[d]iscovery will likely reveal the extent to which . . . FCA breached collectively bargained and other negotiated agreements." (SAC ¶ 104.)  That argument contradicts this Court's decision in *Emmet*, *supra*, and Sixth Circuit precedent.  Indeed, "[t]he very purpose of Fed. R. Civ. P. 12(b)(6) 'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" *Yuhasz* v. *Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003).  Thus, Plaintiffs "may not proceed to discovery on speculation alone." *Saco* v. *Deutsche Bank Nat. Tr. Co.*, 595 F. App'x 500, 502 (6th Cir. 2014); *see Holliday* v. *Wells Fargo Bank, NA*, 569 F. App'x 366, 372 (6th Cir. 2014) ("well settled that a party cannot 'use the discovery process to obtain [facts needed to state a claim] after filing suit'"); *Curney* v. *City of Highland Park*, 2012 WL 1079473, at *5 (E.D. Mich. Mar. 30, 2012) ("Plaintiff cannot . . . hop[e] that discovery will reveal facts to support the

claim.  A lawsuit is not a fishing expedition for a plaintiff to discover a claim against the defendant.").

Nor are Plaintiffs excused from identifying the contract provisions that FCA allegedly violated merely by contending that "[a]ll collective bargaining agreements . . . are in the possession of FCA and the UAW."  (SAC ¶ 91.)  "[A] union member is generally responsible for knowing the contents of his collective bargaining agreement."  *Overstreet* v. *Mack Indus., Inc.*, 260 F. App'x 883, 886 (6th Cir. 2008).  Thus, an "argument . . . that simply relies on [Plaintiffs'] own ignorance of the expressed terms of [their] own collective bargaining agreement" must fail.  *Shapiro* v. *Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir. 1985); *see New Albany Tractor, Inc.* v. *Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) ("plaintiff must allege specific facts [to support a plausible claim] even if those facts are only within the head or hands of the defendants").

Rather than alleging a breach by FCA—which Plaintiffs do not, and cannot, do—Plaintiffs appear to allege only that they are dissatisfied with the UAW Trust and others' negotiation of the Purchase Agreement and various master collective bargaining agreements.  (*See* SAC ¶ 96 (alleging that UAW "executives" took "FCA-friendly positions during negotiations and collective bargaining"); *see also id.* ¶¶ 99-101.)  But Section 301 does not provide a cause of action to invalidate "a contract with which [Plaintiffs] are dissatisfied."  *Am. Postal Workers* v. *Am.*

*Postal Workers Union, AFL-CIO*, 665 F.2d 1096, 1109 (D.C. Cir. 1981). Section 301 is "a grant of jurisdiction only to *enforce contracts*."  *Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 561 U.S. 287, 311 (2010) (emphasis added).

Thus, when the alleged harm stems from the union's "negotiation of the collective bargaining agreement—not by the employer's breach of a provision of it—the plaintiff may not maintain a cause of action under § 301." *Abdelmesih* v. *Waldorf-Astoria*, 1998 WL 740940, at *5 (S.D.N.Y. Oct. 21, 1998); *see Copeland* v. *Penske Logistics LLC*, 675 F.3d 1040, 1044 (7th Cir. 2012) (Easterbrook, J.) ("[A] contention that a union did not bargain hard enough . . . is not a suit for a violation *of* the CBA and so is outside § 301." (emphasis in original)); *Newspaper Guild of Salem* v. *Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1283-85 (1st Cir. 1996) (Section 301 inapplicable to claims premised on employer's "conduct during negotiations" rather than "breach of the collective bargaining agreement").

### C.    Plaintiffs' Disguised Section 302 Claim Should Be Dismissed Because That Criminal Statute Does Not Create a Private Action.

Section 302 of the LMRA "makes it a crime for an employer to willfully give money to a labor union." *Ohlendorf*, 883 F.3d at 640.  The Sixth Circuit has now held that Section 302 "does not create a private right of action."  *Id.* at 639. And even if Section 302 permitted private actions, the Courts of Appeals have "unanimously held that . . . federal courts lack jurisdiction to award money damages for violations of [Section 302]."  *Xin Wei Lin* v. *Chinese Staff & Workers'*

*Ass'n*, 527 F. App'x 83, 87 (2d Cir. 2013); *see Sellers* v. *O'Connell*, 701 F.2d 575, 578 (6th Cir. 1983) (Section 302 "authorizes only injunctive relief."). Because this action is nothing more than an attempt to recover money damages for purported prohibited payments in violation of Section 302, the Second Amended Complaint must be dismissed.

Plaintiffs cannot evade Section 302's limits merely by labeling their claim as a "hybrid § 301 claim." (SAC ¶ 1.) Plaintiffs readily admit in their motion for leave to file their Second Amended Complaint that "the underlying basis for [their] claims" is the alleged "collusion between officers/executives of FCA and the UAW." (Dkt. No. 22 at 6-7.) Plaintiffs also make clear in their Second Amended Complaint that their claim has nothing to do with any breaches of collective bargaining agreements, but relates solely to alleged "prohibited payments in violation of 29 USC 186 [*i.e.*, Section 302 of the LMRA]" (SAC ¶ 97):

- "FCA *engaged in collusion with the UAW* to obtain company-friendly positions at the bargaining table and elsewhere." (*Id.* ¶ 2 (emphasis added).)

- "Over the course of the conspiracy, *FCA transferred prohibited payments and things of value to UAW officers.*" (*Id.* ¶ 67 (emphasis added).)

- "[T]he *collusion tainted the negotiations between FCA and the UAW Trust*, which by definition led to a non-arm's length transaction." (*Id.* ¶ 88 (emphasis added).)

- "The *collusion has resulted* in millions of dollars of Union dues used for unintended or illegal purposes." (*Id.* ¶ 90 (emphasis added).)

-17-

- "The *prohibited payments* and other conduct *impermissibly influenced the sale* of the UAW Trust's interest to FCA." (*Id.* ¶ 101 (emphasis added).)

- "Plaintiffs . . . have been harmed by having the dues they have faithfully paid *used for purposes other than good-faith bargaining and arm's length negotiations*." (*Id.* ¶ 102 (emphasis added).)

The Sixth Circuit has expressly held that such allegations of "improper payoffs to union officials" "may not be redressed pursuant to § 301." *Garrish*, 417 F.3d at 597-98. As the Sixth Circuit recently emphasized, courts must "respect [Congress's] ability to decide when, and when not, to create private rights of action," by maintaining the boundary between § 301 (which authorizes a private cause of action) and § 302 (which does not):

> Section 302 is flanked by provisions of the Labor Management Relations Act that expressly establish private rights of action. Section 301 says that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court." 29 U.S.C. § 185(a). But that provision—creating a right of action for violations of collective bargaining agreements—does not cover this dispute. . . . We should respect [Congress's] ability to decide when, and when not, to create private rights of action.

*Ohlendorf*, 883 F.3d at 642.

Accordingly, "Plaintiffs cannot create jurisdiction by repackaging the allegations as § 301 breach of contract claims." *Reade* v. *Allied Trades Council*, 2005 WL 3038645, at *5 (S.D.N.Y. Oct. 7, 2005); *see Young* v. *UAW*, 686 F. App'x 304, 312 (6th Cir. 2017) (holding that plaintiffs "cannot avoid having to show breach-of-contract by 'artful[] pleading'"). As the Supreme Court has

explained, "[t]he balance federal statutes strike between employer and union relations in the collective-bargaining arena is carefully calibrated," and thus Section 301 may not be extended beyond its narrow confines as "a grant of jurisdiction only to enforce contracts." *Granite Rock*, 561 U.S. at 311 (rejecting argument to expand Section 301 to reach "tort cause[s] of action").

## II. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THAT THEY EXHAUSTED BOTH THEIR CONTRACTUAL AND INTERNAL UNION REMEDIES.

"[B]efore bringing suit" under Section 301, aggrieved employees must satisfy two separate exhaustion requirements:  they must exhaust (i) "contractual grievance and arbitration procedures set forth in the collective bargaining agreement," and (ii) "internal union . . . appeal procedure[s] established in the UAW Constitution."   *Chapman*, 670 F.3d at 680-82.   These "are separate prerequisites to an employee suit." *Willetts* v. *Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir. 1978).  "Moreover, inexcusable failure to exhaust union appeals bars suit 'not only against the union[ ], but also against [the employer].'" *Wagner* v. *Gen. Dynamics*, 905 F.2d 126, 127 (6th Cir. 1990) (brackets in original).   Courts routinely dismiss complaints where, as here, plaintiffs neither allege that they attempted to exhaust these procedures, nor plead "facts to show that the failure to exhaust should be excused." *Young*, 148 F. Supp. 3d at 614; *see* cases cited below.

## A.     Plaintiffs Concede That They Did Not Exhaust the Grievance Procedures Under the Collective Bargaining Agreement.

Employees "*must* attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650, 652 (1965) (emphasis added).  Here, the governing 2015 master collective bargaining agreement, which Plaintiffs rely upon in the Second Amended Complaint (*see* SAC ¶¶ 52-53, 89, 100), contains a multi-step grievance procedure.  (*See* O'Brien Decl. Ex. 3 §§ 22-27.)[7]  Yet Plaintiffs make no allegation that they attempted to exhaust these grievance procedures.  Although exhaustion may be excused in limited circumstances where "failure to exhaust is due to the union's error or wrongdoing and, thus, is beyond the employee's control," *Chapman*, 670 F.3d at 684, Plaintiffs make no such factual allegations.  Indeed, the Second Amended Complaint makes no mention at all of the grievance procedures under the collective bargaining agreement.

Because "[e]xhaustion of contractual grievance procedures is *always required*," *Winston*, 93 F.3d at 255 (emphasis added), the Second Amended Complaint should be dismissed for this reason alone.  *See Terwilliger* v.

---

[7]     The Court may consider the collective bargaining agreement on this motion because it is "referred to in the Complaint and [is] central to the claims contained therein." *Bassett*, 528 F.3d at 430.  Indeed, the Sixth Circuit has expressly held that district courts must permit defendants to "submi[t] [] a copy of the CBA" into "the record" when ruling on a "motion to dismiss" a hybrid Section 301 claim. *Haren* v. *Superior Dairy, Inc.*, 23 F. App'x 509, 510 (6th Cir. 2001).

*Greyhound Lines, Inc.*, 882 F.2d 1033, 1034 (6th Cir. 1989) ("hold[ing] that this case should have been dismissed for [plaintiff's] failure to exhaust the remedies available in the collective bargaining agreement"); *Zbuka* v. *Marathon Ashland Petroleum LLC*, 2008 WL 11381874, at *4 (N.D. Ohio Oct. 22, 2008) (dismissing complaint where plaintiff "does not allege that he took any appropriate action to initiate the grievance process"); *Demott* v. *UAW*, 2007 WL 4303222, at *3 (E.D. Mich. Dec. 6, 2007) (same).

### B. Plaintiffs Do Not Adequately Allege That They Are Excused From Exhausting the Internal Union Appeal Procedures.

Plaintiffs' contention that exhaustion of internal union remedies should be excused (SAC ¶¶ 36-43) is insufficient as a matter of law. Plaintiffs can avoid exhaustion of internal union remedies only if (i) "the Union is so hostile to them that they have no hope of obtaining a fair hearing," (ii) "internal union appeals procedures are inadequate to provide relief or reactivate their grievances," or (iii) "exhaustion would unreasonably delay their chances to obtain a judicial hearing on the merits of their claims." *Spicer*, 491 F. App'x at 545. "The plaintiff bears the burden of showing that exhaustion should be excused," *Pearson* v. *UAW*, 694 F. App'x 401, 403 (6th Cir. 2017), and courts require the plaintiff to make a "'clear and positive showing of futility' before excusing a failure to exhaust." *Young*, 148 F. Supp. 3d at 614 (dismissing complaint).

-21-

Plaintiffs give three perfunctory reasons for why they were not required even to attempt to pursue their internal union remedies.   (SAC ¶¶ 38-43.)   These "general and conclusory allegations," which Plaintiffs "fail to develop . . . in their Complaint," fail as a matter of law.   *Young*, 148 F. Supp. 3d at 614; *see 16630 Southfield L.P.* v. *Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (Plaintiffs must "identify facts that plausibly support[] [their] legal conclusion").

*1. Hostility.*   Plaintiffs speculate that they would have "no hope of obtaining a fair hearing through internal Union procedures" in light of the "prolonged and expansive collusive conduct" between "FCA and the UAW."   (SAC ¶¶ 38-39.) This argument misses the mark for three reasons.   *First*, by Plaintiffs' own admission, the "collusive" conduct ended at the latest in 2016, and the participants in the "conspiracy" either are "deceased" or no longer employed by the UAW. (SAC ¶¶ 64-66, 73-76.)   Plaintiffs do not explain why past conduct of former or deceased UAW employees somehow prevented them from obtaining a fair hearing in 2017 or 2018. *Second*, Plaintiffs' purported "subjective belief" that the "union was in agreement with the company and would not have pursued their claim" is "insufficient to excuse them from at least *attempting* to utilize the procedures." *Terwilliger*, 882 F.2d at 1039 (emphasis in original).   *Third*, "Plaintiffs are required to demonstrate hostility or bias at every level of a union's appeals process," which Plaintiffs do not, and cannot, do.   *Demott*, 2007 WL 4303222, at

*4 (dismissing complaint).  Indeed, "[t]he Sixth Circuit has held that the UAW appeals process is fair and reasonable and has repeatedly rejected claims of hostility."  *Id.*  This is because the "UAW constitution permits [members] to seek redress before the Public Review Board," which consists of an "impartial" and "independent group of academic and social agency persons" "of good public repute" and "with no UAW affiliation."  *Wagner*, 905 F.2d at 128.  Thus, as in other cases, Plaintiffs here "cannot show that the [Public Review Board] would deny [them] a fair hearing."  *Id.*; *see Spicer*, 491 F. App'x at 546 (same, affirming dismissal under Rule 12(b)(6)).

  2.  ***Inability To Obtain Full Relief.***  Plaintiffs allege in a single conclusory sentence that "[i]nternal Union procedures are unable to provide the class with the full relief it seeks."  (SAC ¶ 41.)  Not only is this "precisely the kind[] of conclusory allegation[] that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore," *16630 Southfield*, 727 F.3d at 506, but it is also wrong as a matter of law and fact.  Plaintiffs seek "monetary" "damages" for repayment of their union "dues."  (SAC pp. 18-19 (Prayer for Relief).)  The Sixth Circuit has repeatedly held that the UAW's "[Public Review Board] has the authority to require the Union to pay money damages," and therefore has repeatedly rejected this same argument.  *Chapman*, 670 F.3d at 685; *see Washington* v. *Ford Motor Co.*, 35 F. App'x 160, 163 (6th Cir. 2002) ("The [UAW's] internal union appeals procedures

available to [plaintiff], however, were plainly adequate to award [him] the only relief he actually sought:  monetary damages.").[8]

**3.  *Right To Judicial Review.***   Lastly, Plaintiffs assert that "[r]equiring exhaustion would run contrary to the class's right to seek judicial review of the facts and claims in this hybrid § 301 action."  (SAC ¶ 42.)  But no court has held that a plaintiff may bypass the internal union appeals process merely because they prefer to litigate in federal court.  That is the very opposite of the "congressional policy" underlying federal labor law, which mandates "that the court system [be] a place of last resort for employee grievances."  *Winston*, 93 F.3d at 255.  The exhaustion requirement exists for a reason—it not only "help[s] achieve industry stabilization and industrial peace," but also "relieve[s] the judiciary from the adjudication of disputes that otherwise could overwhelm the court system," *Chapman*, 670 F.3d at 681:

> Allowing employees to sidestep this system substitutes litigation for the method chosen by the employer and union for orderly resolution of employee grievances.  It denies the system an opportunity to work and, because the suit is a hybrid § 301/fair representation case, carries both employer and union into the courthouse.

---

[8]      *Pearson*, 694 F. App'x at 406 (Because the UAW's "[Convention Appeals Committee] has the authority to order the Union to pay monetary damages to [plaintiff]," plaintiff cannot show that the UAW's internal appeal bodies "would not be able to award him the full relief he seeks."); *Knighten* v. *Gen. Motors Corp.*, 2009 WL 332821, at *3 (6th Cir. Feb. 12, 2009) (noting that the UAW's "[International Executive Board], [Public Review Board] and [Convention Appeals Committee] are authorized to order the UAW to pay money damages").

*Id.* at 684; *see also Republic Steel*, 379 U.S. at 652-53 (explaining why a rule "permit[ting] an individual employee to completely sidestep available grievance procedures in favor of a lawsuit" would "exert a disruptive influence upon both the negotiation and administration of collective agreements").

In sum, "[b]ecause [Plaintiffs] ha[ve] not alleged . . . any circumstances that would excuse [them] from the exhaustion requirement, the case must be dismissed." *Mays* v. *N. Am. Truck Platforms Flint Assembly*, 1995 WL 871013, at *2 (E.D. Mich. Sept. 20, 1995).

## CONCLUSION

For the foregoing reasons, FCA respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Respectfully submitted,

/s/ Thomas W. Cranmer

Julia M. Jordan (N.Y. 2814952)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.,
Suite 700
Washington, D.C. 20006-5215

Steven L. Holley (N.Y. 1917830)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498

Thomas W. Cranmer (P25252)
David O'Brien (P65532)
Brian Schwartz (P69018)
MILLER, CANFIELD, PADDOCK &
STONE, PLC
840 West Long Lake Road, Suite 150
Troy, Michigan 48098-6358

*Counsel for Defendant FCA US LLC*

June 5, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following to all parties of record, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: None.

Respectfully submitted,

By: <u>/s/Thomas W. Cranmer</u>
Thomas W. Cranmer (P25252)
Miller, Canfield, Paddock and Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan  48098-6358
Phone: (248) 879-2000
cranmer@millercanfield.com

*Attorney for Defendant FCA US, LLC*

Dated:  June 5, 2018